**In re ZYPREXA PRODUCTS LIABILITY LITIGATION.**

**This Document Relates to: All Actions.**

**No. 04–MD–1596 (JBW).**

United States District Court,
E.D. New York.

Aug. 17, 2009.

MEMORANDUM ON COORDINATION OF SETTLEMENT AND RESOLUTION OF ATTORNEY GENERAL CLAIMS

JACK B. WEINSTEIN, Senior District Judge:

*To:* State judges and counsel in *Zyprexa* cases brought by State Attorneys General against Eli Lilly and Company

The Honorable Timothy D. Fox

*State of Arkansas ex rel. Dustin McDaniel, Attorney General v. Lilly,* Case No. CV 2008 4722 (Circuit Court of Pulaski County, Arkansas, 1st Division)

The Honorable Howland W. Abramson

*Commonwealth of Pennsylvania v. Eli Lilly & Company, Inc., AstraZeneca Pharmaceuticals, L.P., and Janssen Pharmaceutical, Inc.,* Case No. 002836 (Court of Common Pleas of Philadelphia County)

The Honorable Roger L. Couch

*State of South Carolina ex rel. Henry McMaster, in his capacity as Attorney General of the State of South Carolina v. Lilly,* Case No.2007–CP–42–1855 (Court of Common Pleas, Seventh Judicial Circuit)

The Honorable Robert P. Faust

*State of Utah v. Lilly,* Civil No. 070907357 (Third Judicial District Court of Salt Lake County)

1. Before this court are a number of *Zyprexa* cases brought against Eli Lilly & Company by State Attorneys General. These cases were commenced in, or transferred to, the Eastern District of New York by the federal Judicial Panel on Multidistrict Litigation. After extensive settlements, three such cases remain pending in this court: those brought by the Attorneys General of Idaho (Case No. 09–CV–432), Louisiana (Cases No. 05–CV–1455, 05–CV–1549), and Mississippi (Case No. 07–CV–645). As noted above, similar Attorney General cases still pending in state courts were brought by the Attorneys General of Arkansas, Pennsylvania, South Carolina, and Utah.

2. Efforts are being made to settle the cases brought by the Attorneys General now pending before this court and, this court is informed, in state courts. It would be useful to settle all Attorney General claims as part of a coordinated effort since the issues in each are much the same and settlement terms should be relatively uniform through the country.

3. Further delays will unnecessarily increase transactional costs. Settlements in Attorney General cases to date, as well as the extensive discovery materials assembled, suggest that pending cases can be, and should be, reasonably settled.

4. A global settlement of all cases, including those pending in state courts, is desirable. This is particularly true since uniform portions of settlements already approved contain restrictions on practices in the sale of pharmaceutical products that should be uniform throughout the nation. Hearings to ensure national uniformity of provisions affecting many institutions and persons not directly involved in these litigations may be necessary.

5. The parties in the *Zyprexa* cases pending in this court have been directed to engage in settlement discussions. *See* Attachment A (Order on Discovery Appeal and Special Settlement Master); Attachment B (Order to Special Settlement Master on Settlement of State Attorney General Cases). Michael K. Rozen, Esq. was appointed Special Settlement Master. Fees for the Special Settlement Master, by direction of the court, have been arranged among the parties.

6. The cases before this court are now in the process of being settled.

7. In connection with settlement and all related processes, this court and the Special Settlement Master will fully cooperate with any state judge conducting a related Attorney General case who wishes to participate. The Special Settlement Master has been authorized to coordinate the work of this court with that of the state courts wishing his assistance. Any cooperation and coordination is wholly voluntary.

8. To assist all courts and parties involved in the *Zyprexa* litigation, discovery materials in the *Zyprexa* cases filed in or transferred to the Eastern District of New York have been made available to judges and counsel engaged in similar litigations both in the state and federal courts. *See In re Zyprexa Prods. Liab. Litig.*, 424 F.Supp.2d 488, 491 (E.D.N.Y.2006) ("[A]ll litigants, whether in federal or any state court, have access to the materials obtained in pretrial discovery.").

9. This communication is being sent as a matter of comity and pursuant to national judicial policy promoting cooperation between federal and state courts dealing with closely related litigations. *See* Managing Class Action Litigation: A Pocket Guide for Judges 32–34 (2d ed.2009) (discussing coordination of state and federal litigations); Manual for Complex Litigation §§ 21.42 and 20.32 (4th ed.2007) (same); William W. Schwarzer, Nancy E. Weiss & Alan Hirsch, *Judicial Federalism in Action: Coordination of Litigation in State and Federal Court*, 78 Va. L.Rev. 1689 (1992). *See also* Attachment C (*In re Zyprexa Prods. Liab. Litig.*, 239 F.R.D. 316 (E.D.N.Y.2007) ("Memorandum on Cooperation Between Federal and State Judges")).

10. Special Settlement Master Rozen [The Feinberg Group, 780 Third Avenue, 26th Floor, New York, N.Y. 10017; Phone: (212) 527–9600; Fax: (212) 527–9611] and this court are available to provide coordination and to give and take assistance with respect to still pending *Zyprexa* cases brought by the Attorneys General in state and federal courts.

11. I would very much appreciate your views. I am happy to visit with you by a telephone conference or in person, at your convenience.

## Attachment A: Order on Discovery Appeal and Special Settlement Master

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

In re: ZYPREXA PRODUCTS LIABILITY LITIGATION

JIM HOOD, ATTORNEY GENERAL OF THE STATE OF MISSISSIPPI, ex rel. THE STATE OF MISSISSIPPI, Plaintiff,

vs.

ELI LILLY & COMPANY, Defendant.

STATE OF LOUISIANA, ex rel. CHARLES C. FOTI, JR., ATTORNEY GENERAL, Plaintiff,

vs.

ELI LILLY & COMPANY, Defendant.

CHARLES FOTI, ATTORNEY GENERAL, ex rel. STATE OF LOUISIANA, Plaintiff,

vs.

ELI LILLY & COMPANY, INC., et al., Defendants.

STATE OF WEST VIRGINIA ex rel. DARRELL V. MCGRAW, JR., ATTORNEY GENERAL, Plaintiff,

vs.

ELI LILLY & COMPANY, Defendant.

STATE OF NEW MEXICO, ex rel. PATRICIA MADRID, ATTORNEY GENERAL OF THE STATE OF NEW MEXICO, Plaintiff,

vs.

ELI LILLY & COMPANY, Defendant.

THE STATE OF MONTANA, ex rel. MIKE MCGRATH, Attorney General, Plaintiff,

vs.

ELI LILLY & COMPANY, Defendant.

STATE OF CONNECTICUT, Plaintiff,

vs.

ELI LILLY & COMPANY, Defendant.

04–MD–1596

07–CV–645, 05–CV–01549, 05–CV–1455, 06–CV–5826, 07–CV–1749, 07–CV–1933, 08–CV–955.

## ORDER ON DISCOVERY APPEAL AND SPECIAL SETTLEMENT MASTER

JACK B. WEINSTEIN, Senior United States District Judge:

### I. *Introduction*

These cases brought by Attorneys General are part of a wide-ranging series of lawsuits based upon allegations of fraud by Eli Lilly & Company ("Lilly") in advertising and distributing its drug Zyprexa for a variety of mental health problems. *See, e.g., In re Zyprexa Products Liability Litigation*, 253 F.R.D. 69, 78–81 (E.D.N.Y.2008) (discussion of other Zyprexa cases). Most of the suits brought by Attorneys General have been settled. *See* Alex Berenson, *33 States to Get $62 Million in Zyprexa Case Settlement*, N.Y. Times, October 7, 2008, at B7.

After settlement by more than thirty states, there are still pending cases against Lilly brought by Attorneys General from eleven states. In this court are cases by Connecticut, Louisiana, Mississippi, Montana, New Mexico, and West Virginia. The Idaho Attorney General's case against Lilly is in the process of being transferred to this court by the Multi–District Litigation Pan el. Cases brought by Arkansas, Pennsylvania, South Carolina, and Utah are before state courts.

While most states have settled their cases against Lilly for a few million dollars each, the states with cases now pending in this court—Connecticut, Louisiana, Mississippi, Montana, New Mexico, and West Virginia— are seeking, on essentially the same theories and evidence, many billions of dollars in damages and fines.

In the discussion which follows, two issues are addressed: first, plaintiffs' appeal from the magistrate judge's order on discovery is discussed. *See* 9/24/08 Memorandum and Order, Docket No. 04–MD–1596, Docket Entry ("D.E.") No.1900 ("order"). The order is affirmed. Second, steps to encourage settlement are outlined and a Special Settlement Master is appointed.

### II. *Appeal from Discovery Order*

#### A. *Deference to Magistrate Judge Ruling*

■ Federal Rule of Civil Procedure 72(a) provides for deferential review of a magistrate judge's determinations. The reviewing court may modify or set aside the magistrate judge's order on a nondispositive pretrial matter such as discovery only if it is found to be "clearly erroneous" or "contrary to law." Fed.R.Civ.P. 72(a). The magistrate judge's order may be reversed only if there is clear error. *See Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir.1990) (finding that matters involving pretrial discovery are generally considered "nondispositive of the litigation" and thus are subject to the "clearly erroneous or contrary to law standard" on review by a district court).

#### B. *Privilege*

The magistrate judge has demonstrated why privilege under federal or state law does not prevent operation of her discovery order. *See* Order at 3–7.

The doctrine of waiver also applies. State and federal law provides for the waiver of a privilege by a plaintiff who attempts to use the privilege to block the defendant from obtaining evidence needed to mount a defense against plaintiff's claims. As Judge Learned Hand wrote:

> [T]he privilege is to suppress the truth, but that does not mean that it is a privilege to garble it; although its exercise deprives the parties of evidence, it should not furnish one side with what may be false evidence and deprive the other of any means of detecting the imposition ... for disputes ought to be settled so far as they can be by resort to the whole truth; and when the only excuse for darkness ceases, it is shocking to shut out the light.

*United States v. St. Pierre*, 132 F.2d 837, 840 (2d Cir.1942) (5th Amendment privilege), *cert. dismissed as moot*, 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199 (1943); *see also* 3 Marga-

ret A. Berger et al., *Federal Evidence* § 511.05 (Gen. ed. Joseph M. McLaughlin) (Rev. ed. 2008) ("Initiating and maintaining a lawsuit may waive any privilege that applies to matters at issue in the case.").

"Fairness considerations may also come into play where the party asserting the privilege makes factual assertions, the truthfulness of which may be assessed only by an examination of the privileged communications or documents." *Falise v. American Tobacco Co.*, 193 F.R.D. 73, 84 (E.D.N.Y. 2000) (attorney-client and work-product); *see also In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir.1993) ("selective assertion of privilege should not be merely another brush on an attorney's palette, utilized and manipulated to gain tactical or strategic advantage"). *Cf. In re County of Erie*, 546 F.3d 222, 229–30 (2d Cir.2008) (describing unfairness where a party asserts a fact but denies its adversary access to material that could possibly rebut that fact).

■ A party cannot use the "shield" of privilege to disable a defendant. Utilization of privilege by a plaintiff to cripple a fair defense would violate due process. *See, e.g., McMillan v. City of New York*, No. 08–2887, 2008 WL 4555550 (E.D.N.Y. October 14, 2008).

C.  *Application of Law*

■ The discovery order of the magistrate judge is confirmed. It is based upon a fair and cogent analysis of the reasonable needs of all parties.

It has been established that the records at issue are relevant to this case. *See* Case Management Order 1, Docket No. 04–MD–1596, D.E. No. 1821. The magistrate judge has provided an extensive and reasoned discussion of the issues of individual patient privacy and the mechanism for production. She has reduced discovery so far as it is practicable to do so. Much of the load has been placed on Lilly, including major financial costs.

Despite effective efforts by the magistrate judge to minimize discovery, the procedures that have been ordered will be expensive and burdensome. Moreover, there may be a bur-

den imposed on health care providers, who already face significant stresses. Nevertheless, the damages being sought are substantial, and plaintiffs must recognize their responsibility for discovery if they wish to prosecute their suits.

Plaintiffs may not assert the physician-patient or other privileges in order to deprive the defendant of material reasonably needed for its defense. If a plaintiff wishes to withhold critical records based on state privileges, or because of a desire to protect privacy, it is free to do so by withdrawing its claims. By initiating and maintaining this lawsuit, a plaintiff waives privileges blocking essential discovery.

The redaction of medical records ordered by the magistrate judge adequately addresses concerns about privilege and patient privacy. *See* Order at 12; *In re Rezulin Products Liability Litigation*, 178 F.Supp.2d 412, 416 (S.D.N.Y.2001). She fully considered and came to appropriate conclusions regarding the application of federal and state privileges and the protection of individual patients' privacy. Her order provides for an efficient means of production, sensitive to the needs of all parties, including providers and patients.

The magistrate judge's discovery order is not clearly erroneous or contrary to law. The appeal from the order is denied.

D.  *Stay*

The order is stayed for thirty days. This delay will permit the parties and any other persons to consult on settlement and other matters. It may avoid or reduce the need for discovery. Any party may request a further extension of the stay.

III.  *Settlement*

A.  *Desirability of Settlement Now*

■ Every effort should be made to settle all pending cases brought by Attorneys General which are before this court, and any other like cases in federal or state court. It would be useful to settle all pending Attorney General claims at the same time since the issues in each are much the same. Further

delays will unnecessarily increase transactional costs.

In view of the applicable statute of limitations, it is unlikely that any new cases can be brought successfully. A global settlement of all cases, including those pending in state courts, is desirable. *See* Hearing Tr. of October 17, 2008 at 61–64.

### B. *Settlement Discussions Aided by Special Settlement Master*

The parties in the captioned cases are directed to engage in settlement discussions. Michael K. Rozen is appointed Special Settlement Master. *See* Attached Vitae. Fees for the Special Settlement Master shall be arranged among the parties.

In connection with settlement, or for any other purposes, this court and the Special Settlement Master will fully cooperate with any federal or state judge conducting a related Attorney General case.

### C. *Modification of Order*

Any party or person may move within ten days for a modification of this settlement order.

SO ORDERED.

Jack B. Weinstein

Senior United States District Judge

Date: October 21, 2008

Brooklyn, N.Y.

THE FEINBERG GROUP, LLP

780 THIRD AVENUE

26th FLOOR

NEW YORK, NEW YORK 10017–2024

(212) 527–9600 (TELEPHONE)

(212) 527–9611(FAX)

WRITER'S DIRECT DIAL NUMBER

WASHINGTON OFFICE

THE WILLARD OFFICE BUILDING

1455 PENNSYLVANIA AVENUE, N.W.

SUITE 380

WASHINGTON, D.C. 20004–1008

TEL: (202) 371–1110

FAX: (202) 982–9290

### MICHAEL K. ROZEN

Mr. Rozen is a partner in The Feinberg Group, LLP specializing in the negotiation, mediation and settlement of complex, multiparty disputes. Mr. Rozen has successfully negotiated or mediated thousands of disputes in such areas as products liability—including asbestos, lead paint, fen-phen, zyprexa, medical devices, and others—toxic tort and environmental insurance coverage, shareholder class actions, employment discrimination, intellectual property and numerous other business and commercial matters.

In addition to his work as a privately retained settlement counsel, mediator and arbitrator, Mr. Rozen served as the court-appointed Special Settlement Master/Referee for asbestos litigation, in a joint federal and state appointment, in the Southern and Eastern Districts of New York and New York State Supreme Court from January 1994 through July 1999, as well as the Special Discovery Master/Referee for asbestos litigation in the City of New York from September 1996 through July 1999. Mr. Rozen has also served as Special Settlement/Discovery Master, *In re Informix Corporation Securities Litigation* (securities fraud class action); Court-appointed Mediator, *Rapid American v. Allstate Insurance Co. et al.* (insurance coverage action involving numerous carriers); Special Settlement/Discovery Master, *Herman v. Westinghouse Electric Company* (employment discrimination class action); Special Settlement Master, *Cook v. Georgia Pacific Corp., et al.* (consolidation of asbestos cases); Court-appointed Mediator, *Maxicare Health Plans, Inc. v. Pennsylvania Dept. of Public Welfare, et al.* (health care bankruptcy); Special Settlement Master, In re Eastern District Asbestos Litigation (consolidation of asbestos cases remanded from MDL court); Special Master, *In re Certain Lead Paint Cases* (appointed by court to allocate settlement funds among numerous individu-

als); Special Settlement Master, *In re Zyprexa Products Liability Litigation.* Mr. Rozen has assisted many corporations with so-called prepackaged or prenegotiated asbestos bankruptcies, and advises numerous companies on their litigation and settlement strategy. In addition, Mr. Rozen was a Deputy Special Master of the United States government's September 11th Victim Compensation Fund of 2001.

Mr. Rozen is an active member of various bar associations and has served as chair or co-chair of ADR and tort committees. He has appeared as a panelist on numerous ABA, PLI and private programs, and has lectured extensively throughout the U.S. and abroad to corporations, investors, attorneys and the judiciary on ADR, mass torts, complex litigation, ethics and other matters. Mr. Rozen is also a member of the Board of Directors of Human Rights First.

Mr. Rozen received a B.A. from Tufts University in 1986 and a J.D. from Georgetown University Law Center in 1989, where he was a member of the American Criminal Law Review. Mr. Rozen practiced as a litigator at Kaye, Scholer, Fierman, Hays & Handler from 1989 to 1993 and joined The Feinberg Group at its inception in March 1993.

### Attachment B: Order to Special Settlement Master of State Attorney General Cases

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

In re: ZYPREXA PRODUCTS LIABILITY LITIGATION

JIM HOOD, ATTORNEY GENERAL OF THE STATE OF MISSISSIPPI, ex rel. THE STATE OF MISSISSIPPI, Plaintiff,

vs.

ELI LILLY & COMPANY, Defendant.

STATE OF LOUISIANA, ex rel. CHARLES C. FOTI, JR., ATTORNEY GENERAL, Plaintiff,

vs.

ELI LILLY & COMPANY, Defendant.

CHARLES FOTI, ATTORNEY GENERAL, ex rel. STATE OF LOUISIANA, Plaintiff,

vs.

ELI LILLY & COMPANY, INC., et al., Defendants.

STATE OF WEST VIRGINIA ex rel. DARRELL V. MCGRAW, JR., ATTORNEY GENERAL, Plaintiff,

vs.

ELI LILLY & COMPANY, Defendant.

STATE OF NEW MEXICO, ex rel. PATRICIA MADRID, ATTORNEY GENERAL OF THE STATE OF NEW MEXICO, Plaintiff,

vs.

ELI LILLY & COMPANY, Defendant.

THE STATE OF MONTANA, ex rel. MIKE MCGRATH, Attorney General, Plaintiff,

vs.

ELI LILLY & COMPANY, Defendant.

STATE OF CONNECTICUT, Plaintiff,

vs.

ELI LILLY & COMPANY, Defendant.

THE STATE OF IDAHO, Plaintiff,

vs.

ELI LILLY & COMPANY, Defendant.

THE STATE OF MINNESOTA, Plaintiff,

vs.

ELI LILLY & COMPANY, Defendant.

04–MD–1596

07–CV–645, 05–CV–01549, 05–CV–1455, 06–CV–5826, 07–CV–1749, 07–CV–1933, 08–CV–955, 09–CV–432, 08–CV–4368.

**ORDER TO SPECIAL SETTLEMENT MASTER ON SETTLEMENT OF STATE ATTORNEY GENERAL CASES**

JACK B. WEINSTEIN, **Senior United States District Judge:**

By court order dated October 21, 2008, Michael K. Rozen, Esq., was appointed Special Settlement Master and directed to assist in settlement of cases pending in this court brought by various states against Eli Lilly &

Company (hereinafter "Attorney General cases"). *In re Zyprexa Prods. Liab. Litig.,* 04–MD–1596, 2008 WL 4682311, at *3 (E.D.N.Y. Oct.21, 2008).

The authority of the Special Settlement Master Rozen is now expanded to include Attorney General cases of Idaho and Minnesota, which were recently added to this multidistrict litigation.

As a matter of comity and pursuant to national judicial policy promoting cooperation between federal and state courts dealing with closely related litigations, the Special Settlement Master is now authorized and encouraged to help coordinate the work of this court with that of state courts before which related Attorney General cases are now pending. *See* Managing Class Action Litigation: A Pocket Guide for Judges 32–34 (2d ed.2009) (discussing coordination of state and federal litigations); Manual for Complex Litigation §§ 21.42 and 20.32 (4th ed.2007) (same); William W. Schwarzer, Nancy E. Weiss & Alan Hirsch, *Judicial Federalism in Action: Coordination of Litigation in State and Federal Court,* 78 Va. L.Rev. 1689 (1992).

Cooperation between this court and state courts has been encouraged at all stages of the *Zyprexa* litigation. *See, e.g., In re Zyprexa Prods. Liab. Litig,* 467 F.Supp.2d 256, 262 (E.D.N.Y.2006) ("Cooperation with state courts will continue to be stressed."); *In re Zyprexa Prod. Liab. Litig.,* No. 04–MD–1596, 2006 WL 898105, at *1 (E.D.N.Y. Apr.16, 2006) ("Coordination and cooperation between state and federal courts has been encouraged."); *In re Zyprexa Prods. Liab. Litig,* No. 04–MD–1596, 2006 WL 197151 (E.D.N.Y. Jan.30, 2006) (letter to state judges with Zyprexa cases suggesting coordination and cooperation); *In re Zyprexa Prods. Liab. Litig.,* No. 04–MD–1596, 2004 WL 3520248, at *4 (E.D.N.Y. Aug.18, 2004) (directing defendant Lilly and Plaintiff's Steering Committee I to "confer regarding procedures for coordination of state court discovery with discovery in this MDL").

As an example of that cooperation, all fifty states and the federal government agreed on withholding and allocation of reimbursements and liens in the personal injury phases of the *Zyprexa* litigation. *See* Report on Status of Zyprexa Settlement Fund Escrow Account & Final Report on Status of Resolving Medicare and Medicaid Liens & Motion to Wind Down Settlement Fund Escrow Account by Matthew L. Garretson, Lien Resolution Administrator and Disbursement Administrator, dated Apr. 22, 2009, No. 04–MD–1596, Docket Entry No. 2148, attached as App. A.

The Special Settlement Master shall, as promptly as is practicable, furnish to this court the following information on the status of each pending Attorney General case: the court in which the case is pending, the name and address of the presiding judge, the case's general status with respect to discovery and any aspects significant for cooperation, trial date, and progress towards settlement.

A copy of this order and, once compiled, a copy of the status report on all Attorney General cases shall be provided to each judge now presiding over an Attorney General case and to counsel in all Attorney General cases now pending in the United States.

A history of the *Zyprexa* multi-district litigation is attached. *See* App. B; *see generally In re Zyprexa Prods. Liab. Litig.,* 253 F.R.D. 69, 78–81 (E.D.N.Y.2008).

The Special Settlement Master is reminded that discovery materials in related MDL cases have been available to counsel litigating both in the state and federal courts through the multidistrict litigation now pending in the Eastern District of New York. *See In re Zyprexa Prods. Liab. Litig.* 424 F.Supp.2d 488, 491 (E.D.N.Y.2006) ("[A]ll litigants, whether in federal or any state court, have access to the materials obtained in pretrial discovery.").

SO ORDERED.

/s/ *Jack B. Weinstein*

Jack B. Weinstein

Senior United States District Judge

Date: May 1,2009

Brooklyn, New York

### Appendix A

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

In re: ZYPREXA PRODUCTS LIABILITY LITIGATION

04–MDL–1596 (JBW)

**Report on Status of Zyprexa Settlement Fund Escrow Account & Final Report on Status of Resolving Medicare and Medicaid Liens & Motion To Wind Down Settlement Fund Escrow Account**

As Lien Resolution Administrator and Disbursement Administrator in the above referenced matter, The Garretson Law Firm, LLC ("The Garretson Firm") hereby provides the Court with a report on the status of the Zyprexa Settlement Fund Escrow Account ("Settlement Account"), as well as the status of resolving federal Medicare and state/territory Medicaid reimbursement claims and liens, and moves this Court for an Order authorizing disbursement of certain remaining settlement proceeds to claimants. In support of this Motion, Movant respectfully states as follows:

1. The Garretson Firm was retained as the Lien Resolution Administrator to ensure full compliance with respect to identifying, verifying and resolving federal Medicare and state/territory Medicaid reimbursement claims and liens.[1] The Garretson Finn also was retained to assist the parties with the funds disbursement, accounting and other administrative procedures related to this settlement.

2. With respect to the distribution of the Settlement Account, out of 8,119 claimants participating in this settlement program, as of March 31, 2009, only 109 claimants have any outstanding balance inactive in the Settlement Account, exclusive of lien payments in process. (Hereinafter, for purposes of this report, these 109 claimants are referred to as "Inactive Claimants"). As such, over 99% of the claimants have zero balance due to them; their Medicare and Medicaid liens are finalized; and their claims can be considered closed.

3. 27 of these Inactive Claimants have received some payment from their account out of the Settlement Account but are due a subsequent payment. Furthermore, for these 27 Inactive Claimants, liens attorney fees and case expenses have been paid. While full approval has been provided timely by Eli Lilly & Company and its counsel to pay these 27 Inactive Claimants, the remaining payments to these claimants have become stagnant in the Settlement Account to varying degrees due to unresolved bankruptcy issues, claimants who have died after the settlement program began, and claimants who have yet to complete paper work related to establishing a Special Needs Trust under Federal law to protect their needs-based public assistance benefits (such as SSI and Medicaid) or a Structure Settlement Annuity. An additional 49 of these Inactive Claimants; however, have not been paid any amount of their settlement payment out of the Settlement Account, although in some cases liens, attorney fees and/or expenses have been paid. By and large, these 49 Inactive Claimants have inadequate disbursement agreements with their respective firms, cannot be located, or have estate or bankruptcy issues. These disbursement issues have been unresolved, despite ongoing effort by counsel. Due to the deficient status of each of these 49 claimants' disbursement agreements, no amount of settlement payment can be approved to these claimants. (Hereinafter, for purposes of this report, these 76 Inactive Claimants described in this paragraph are

---

1. In August of 2005, The Garretson Law Firm was engaged by the PSC to design and implement a damages model that would help facilitate reimbursements to federal Medicare (Parts A and B) and state/territory Medicaid agencies related to the plaintiffs who are settling their Zyprexa claims. The Garretson Firm also was asked to engage the states and federal government in discussions to assist in the prompt resolution of reimbursement claims and liens and expedite payment of settlement proceeds to the clients of the PSC and other settling firms.

referred to as "Disbursement Issues" Inactive Claimants).

4. The remaining 33 Inactive Claimants (out of the 109 Inactive Claimants) have had their entire settlement payment held due to deficient releases. These 33 Inactive Claimants described in this paragraph either cannot be found, are deceased, or cannot/will not complete releases. Due to the deficient status of each of these claimants' release, no amount of settlement payment can be approved to these claimants under the terms of the Master Settlement Agreement between the parties. (Hereinafter, for purposes of this report, these 33 Inactive Claimants are referred to as "Deficient Release" Inactive Claimants).

5. With respect to the accounting of the balance of proceeds remaining in the Settlement Account, it perhaps is easiest to understand if the remaining proceeds are segregated into four categories:

● Category 1—Includes the remaining amount related to settlement awards allocated to the 76 Disbursement Issue Inactive Claimants. The proceeds associated with Category 1 are $3,081,386.84 and $266,385.34 in unpaid liens for these claimants, totaling $3,347,771.84 held for these 76 Disbursement Issue Inactive Claimants.

● Category 2—Includes settlement awards allocated to the 33 "Deficient Release" Inactive Claimants for who release issues exist and the claimant cannot be located in order to cure the deficiency and finalize payment. The proceeds associated with Category 2 are $540,047.92. Upon the direction of this Court at the March 26, 2009, hearing this Category 2 balance is to be combined and disbursed with Category 3 below.

● Category 3—Includes unallocated interest remaining in the Settlement Account that heretofore has not been allocated to any specific claimants or other settlement-related expenses. The proceeds associated with Category 3 are $4,888,281.41. According to the provisions in the Master Settlement Agree-

ment between the parties, and upon the direction of this Court at the March 26, 2009 hearing, this Category 3 balance is to be distributed pro rata among the following claimants based upon their initial primary award: the 1,751 IDDM claimants; 3,937 NIDDM claimants; and 65 death claimants ("Supplemental Payment Claimants"). It is estimated that the total expenses associated with disbursing these proceeds will not exceed $25,000.00.

● Category 4—Includes $1,750,000.00 associated with the Special State Fund (within the Settlement Account) established by this Court on September 11, 2006 (*See* Sec. VIII. B. "Non–Inclusion of the Cost of Zyprexa in the Lien Amounts, *Memorandum Order & Judgment Regarding Liens & Disbursement Procedures*", 04–MD–1596 (JBW)). Proceeds in this Special State Fund are to be held in the Settlement Account for 5 years (until September 11, 2011) for purposes consistent with that September 11, 2006 order and then will be distributed upon separate order of this Court. At the March 26, 2009 hearing this Court requested that an order be submitted directing that any of the proceeds associated with Category 3 above which cannot be disbursed to Supplemental Payment Claimants (i.e. due to inability to locate such claimants) are to be placed into this Special State Fund within the Settlement Account.

6. In addition to the funds associated with Categories 1 through 4 above, as of March 31, 2009, an additional $2,421,578.10 remained in the Settlement Account related to "money in motion" primarily to claimants, claimant law firms and Medicare and Medicaid agencies. As of March 31, 2009, these proceeds were in the final steps of the procedures established by the parties for fund disbursement and are anticipated to be out of the Settlement Account within 30 days.

7. An accounting for the Settlement Account has been prepared and is attached as Exhibit 1. (This document, Exhibit 1, has been filed under seal).

8. With respect to the final report regarding the status of Medicare and Medicaid

reimbursement claims/liens, all such claims/liens have been resolved. By way of background, in August of 2005, TGLF was retained by the PSC to facilitate resolution of Medicare and Medicaid reimbursement claims and liens and thereby to expedite the payment of settlement proceeds to the clients of the PSC and other settling firms. While The Garretson Firm had worked on the global resolution of Medicare reimbursement claims in many national settlement programs prior to Zyprexa, this settlement program was the first settlement program to involve a lien resolution administrator to work with all 50 states, as well as the District of Columbia and Puerto Rico, on a state-by-state basis to verify and resolve Medicaid's reimbursement interest (a/k/a "lien") in each case. It is important to note that this had never been done on a proactive and formalized basis in any mass tort prior to Zyprexa. This process has resulted in the states and territories being affirmatively notified of over 8,100 claimants receiving a settlement (and having the opportunity to cross reference social security numbers of those residing in their state in order to expose which claimants are Medicaid beneficiaries).

9. Pursuant to this engagement, The Garretson Firm discovered that greater than 70% of the Zyprexa claimants are/were entitled to Medicaid; 55% are/were entitled Medicare; and, 32% are/were entitled to both Medicare and Medicaid. As a frame of reference, approximately 15% of Americans in the general population are on Medicare; approximately 15% are on Medicaid; and, about 20% of the Medicare beneficiaries also receive Medicaid to help pay for their co pay and deductibles.

10. Throughout the course of The Garretson Firm's engagement, an astonishing 12,364 liens related to 8,119 claimants were resolved. For many of these claimants, The Garretson Firm had to resolve their liens in two stages, once for the primary injury and again for the Extra Ordinary Injury payment; therefore creating two unique reimbursement events for each approved EIF claimant.

11. In this regard, this project involved perhaps at least 3 times as many liens as anyone likely imagined. As a result, a profound ripple effect was created for The Garretson Firm which lasted for greater than 3 and½ years, including:

- Extensive data, audit and claims processing with 54 state and federal agencies as one might expect with this type of engagement;

- The coordination of lien resolution efforts with the probate process for decedents, incompetents and minors [2]: with bankruptcy trustees, and, of course, with the claimant attorneys and Settlement Masters. As an example of this ripple effect, in the context of probate approval, The Garretson Firm addressed issues of capacity, as well as issues of representative capacity, in assisting local counsel to integrate settlement information to complete necessary state court reports in hundreds of cases. The Garretson Firm also had to deal with special procedures for all claimants who were incarcerated.[3]

- Further, this engagement involved extensive client education call center support by The Garretson Firm, including an unprecedented tens-of-thousands of call center minutes in the client education call center that is staffed with specialist who are skilled in answering claimant questions regarding lien resolution issues as well as the preservation of government benefits after settlement proceeds are received.

---

2. The Garretson Firm worked with referring counsel to ensure that appropriate steps were taken prior to submission to obtain representative capacity for minor-claimants by developing a protocol and following our action steps to ensure a least restrictive alternative solution, recommending use of the Uniform Custodial Trust Act where appropriate, or short-form minor compromise, as available under state law.

3. The Garretson Firm addressed how best to deliver funds and ensure proper authority for those claimants who were imprisoned; creating a protocol to ensure that central issues of authority to accept/receive settlement were addressed, taking into account prisoner's rights as they might conflict with victim's rights.

- Pursuant to this educational process, The Garretson Firm assisted 939 claimants who requested the use of special needs trusts under Federal law to protect their needs-based public assistance benefits, such as SSI and Medicaid. This process involved review of the trust documents to ensure compliance with Federal law, as well as preparing submission packages to defense counsel and Lilly for payment. The educational process also enabled claimants to select and utilize the tax-exempt benefits of Structured Settlement Annuities.

- And, finally, The Garretson Firm assisted the parties with addressing the actions filed by private third party payers that sought to intervene in this Zyprexa Settlement Program.

12. Over the course of an engagement that expands across greater than three years, addressing these complex issues has required the resources of many of The Garretson Firm's attorneys, project managers, data analysts, claims processors, medical review staff, billing & coding specialists and claimant education specialists.

WHEREFORE, having provided the foregoing report on the status of the Settlement Account as well as the final report on the status of resolving Medicare and Medicaid liens, Movant respectfully requests that the Court make an Order:

1. Authorizing distribution of the remaining $4,888,281.41 in unallocated interest in Category 3 as described in the Report on Status of Zyprexa Settlement Fund Escrow Account

2. Authorizing the remaining proceeds in Category 2 ($540,047.92 related to 33 Deficient Release Inactive Claimants as described in the Report on Status of Zyprexa Settlement Fund Escrow Account) to be to be combined and disbursed with the Category 3 funds (i.e. the $4,888,281.41 in unallocated interest).

3. Authorizing the $1,750,000.00 associated with Category 4 (a/k/a the "Special State Fund" as described in the Report on Status of Zyprexa Settlement Fund Escrow Account) to be held until September 11, 2011 for purposes consistent with this Court's September 11, 2006 order (*See generally*, Sec. VIII. B. "Non–Inclusion of the Cost of Zyprexa in the Lien Amounts", *Memorandum Order & Judgment Regarding Liens & Disbursement Procedures*, 04–MD–1596 (JBW)) and then to be distributed upon separate order by this Court. Further authorizing any of the proceeds associated with Category 3 above (i.e. the $4,888,281.41 in unallocated interest) which cannot be disbursed to Supplemental Payment Claimants (i.e. due to inability to locate such claimants) to be placed into this Special State Fund within the Settlement Account.

4. Authorizing the $3,347,771.84 in proceeds associated with the 76 Disbursement Issue Inactive Claimants in Category 1 (as described in the Report on Status of Zyprexa Settlement Fund Escrow Account) to remain in the Settlement Account for an additional 6 months (from the date of the Court's Order) to allow counsel for these claimants to finalize the remaining disbursement issues. Until such time, if disbursement issues are resolved for any Disbursement Issue Inactive Claimant, payments may be made to such claimant according to the disbursement protocols associated with this settlement program. Thereafter, any remaining balance associated with these Disbursement Issue Inactive Claimants shall be deemed waived by the claimants and deposited with the Special State Fund and distributed upon separate order by this Court.

5. Authorizing any proceeds returned to the Zyprexa Settlement Fund Escrow Account pursuant to any annual tax filings ("tax returns") by the Fund to be held with the Category 4 funds for the duration associated with Category 4 and distributed thereafter upon separate order by this Court.

6. Authorizing the Administrator(s) of the Zyprexa Settlement Fund Escrow Account to maintain the Fund's account (including payment of any reasonable administrative and/or tax filing related expenses or fees) to continue for the duration

## Appendix B

### History of *In re Zyprexa Products Liability Litigation,* Case No. 04–MD–1596

This massive and highly complex multidistrict litigation has included claims brought by individual Zyprexa users, states, third-party payors, and other entities alleging physical or financial injury. Some 30,000 cases have been brought against Eli Lilly & Company ("Lilly") by individual plaintiffs suffering from serious psychiatric problems who were treated with the Lilly antipsychotic drug Zyprexa. They generally allege that Zyprexa caused deleterious side effects of excessive weight gain, hyperglycemia, and diabetes; that Lilly misled them and their physicians about the likelihood of these side effects; and that, had they or their attending physicians been aware of the risk, they would not have taken Zyprexa. There are also claims for unlawfully encouraging "off-label" uses of Zyprexa.

Litigation against Lilly for injuries allegedly caused by Zyprexa was initiated in this court in March 2004. *See Benjamin v. Eli Lilly & Co.,* No. 04–CV–893. Thousands of cases were then transferred here from federal district courts throughout the United States pursuant to an order of the Judicial Panel on Multidistrict Litigation. *See* Letter from Multidistrict Litigation Panel to Clerk of the Eastern District of New York, No. 04–MD–1596 (Apr. 14, 2004). Similar cases have been litigated in state courts. *See In re Zyprexa Prods. Liab. Litig.,* 239 F.R.D. 316 (E.D.N.Y.2007) ("Memorandum on Cooperation Between Federal and State Judges").

The individual Zyprexa user litigation has been administered as a quasi-class action. *See In re Zyprexa Prods. Liab. Litig.,* 467 F.Supp.2d 256, 262 (E.D.N.Y.2006) ("The court, magistrate judge and special masters will continue to administer this litigation as a quasi-class action."); *In re Zyprexa Prods. Liab. Litig.,* 451 F.Supp.2d 458, 477 (E.D.N.Y.2006) ("Recognizing its obligation to exercise careful oversight of this national 'quasi-class action,' the court has already utilized its equitable power to limit attorneys' fees and costs.") (citation omitted); *In re*

*Zyprexa Prods. Liab. Litig.,* 433 F.Supp.2d 268, 271 (E.D.N.Y.2006) (finding that case "may be characterized properly as a quasi-class action subject to the general equitable power of the court"); *In re Zyprexa Prods. Liab. Litig.,* 424 F.Supp.2d 488, 491 (E.D.N.Y.2006) (same); *In re Zyprexa Prods. Liab. Litig.,* 233 F.R.D. 122, 122 (E.D.N.Y.2006) (same).

Cooperation between federal and state courts has been encouraged at all stages of the Zyprexa litigation. *See, e.g., In re Zyprexa Prods. Liab. Litig.,* 467 F.Supp.2d 256, 262 (E.D.N.Y.2006) ("Cooperation with state courts will continue to be stressed."); *In re Zyprexa Prods. Liab. Litig.,* No. 04–MD–01596, 2006 WL 898105, at *1 (E.D.N.Y. Apr. 16, 2006) ("Coordination and cooperation between state and federal courts has been encouraged."); *In re Zyprexa Prods. Liab. Litig.,* No. 04–MD–01596, 2006 WL 197151 (E.D.N.Y. Jan. 30, 2006) (letter to state judges with Zyprexa cases suggesting coordination and cooperation); *In re Zyprexa Prods. Liab. Litig.,* No. 04–MD–01596, 2004 WL 3520248, at *4 (E.D.N.Y. Aug. 18, 2004) (directing defendant Lilly and Plaintiff's Steering Committee I to "confer regarding procedures for coordination of state court discovery with discovery in this MDL").

An attorneys' fee structure for many cases has been ordered, capping fees at 20% of recovery in smaller, lump-sum claims, and at 35% of recovery in other claims. *See In re Zyprexa Prods. Liab. Litig.,* 424 F.Supp.2d 488 (E.D.N.Y.2006). Costs related to the individual cases and charged to the individual settling plaintiffs were limited. *See In re Zyprexa Prods. Liab. Litig.,* No. 04–MD–1596, 2006 WL 2443248 (E.D.N.Y. Aug.24, 2006). Counsel for some 2,000 individual plaintiffs filed an appeal of an order capping fees, *see In re Zyprexa Prods. Liab. Litig.,* No. 04–MD–1596, 2007 WL 2340789 (E.D.N.Y. Aug.17, 2007), which is now pending before the Court of Appeals for the Second Circuit. The magistrate judge allocated funds from a first common benefit fund after reviewing the first Plaintiffs' Steering Committee's ("PSC I") applications. *See In re Zyprexa Prods. Liab. Litig.,* No. 04–MD–01596, 2007 WL 805793 (E.D.N.Y. Mar. 15,

2007). That process has been substantially completed for PSC I.

A national system for resolving Medicare and Medicaid liens was approved. *See In re Zyprexa Prods. Liab. Litig.*, 451 F.Supp.2d 458 (E.D.N.Y.2006). All states and the federal government agreed to modify their lien demands to provide a national equitable system. *See In re Zyprexa Prods. Liab. Litig.*, No. 04–MD–1596, 2006 WL 3501263 (E.D.N.Y. Dec.4, 2006) ("In compliance with this court's instructions ... all fifty states as well as the federal government have resolved their Medicare and Medicaid liens.") (citation omitted).

After discovery and negotiations, overseen in part by a court-appointed special discovery master and four special settlement masters, in November 2005 Lilly, without conceding liability, entered into a settlement covering some 8,000 individual plaintiffs. *See In re Zyprexa Prods. Liab. Litig.*, No. 04–MD–1596, 2005 WL 3117302 (E.D.N.Y. Nov.22, 2005). The settlement resolved virtually all cases then pending in the MDL, along with some state cases. *See id.*

Following an influx of thousands of new cases, in January of 2007 the parties announced another round of settlements, which are nearing completion. A second common benefit fund was established to compensate members of a second PSC for their work. *See In re Zyprexa Prods. Liab. Litig.*, 467 F.Supp.2d 256, 262 (E.D.N.Y.2006).

A number of motions for summary judgment in individual Zyprexa cases were decided in June 2007. Three of those motions were denied and one was granted based on the application of the statute of limitations, which barred that plaintiff's claim. *See Souther, et al. v. Eli Lilly & Co.*, 489 F.Supp.2d 230 (E.D.N.Y.2007).

A class action has been brought on behalf of third-party payor institutional plaintiffs that include pension funds, labor unions, and insurance companies that cover their members' health benefits; they have covered payments for Zyprexa prescriptions. Mail fraud under the Racketeer Influenced and Corrupt Organizations Act ("RICO") is alleged, *see* 18 U.S.C. § 1964, predicated on overpricing supported by excessive claims of utility as well as disavowal of adverse secondary effects of the drug, primarily weight gain and diabetes. That class has been certified. *See In re Zyprexa Prods. Liab. Litig.*, 253 F.R.D. 69 (E.D.N.Y.2008). Individual plaintiffs who bought or paid a portion of the purchase price for Zyprexa for their own use also sought class action status on a similar theory. Certification of this individual payor class action was denied. *See id.*

Additional cases transferred to the multidistrict litigation are being managed by a special master, who is tracking settlements and setting timelines for discovery, the adjudication of dispositive motions, and schedules for trial. See Case Management Order No. 32, 04–MD–1596, Docket Entry No.2072, Mar. 3, 2009. Several cases originally set for trial have been settled or withdrawn. A number of individual plaintiff actions before this court have pending motions for summary judgment. Individual actions originating in the Eastern District of New York have been placed on an expedited discovery and motion schedule so that trial on those actions may, if necessary, move forward without undue delay.

Many state attorneys general have sued on behalf of their states' citizens claiming reimbursement for overpayments for Zyprexa made with state and federal funds via state Medicaid programs and for other remedies based upon state law grounds. Currently pending in this court are actions on behalf of the citizens of nine states. A putative *qui tam* action by a whistleblower representing California has been dismissed. Order, *California ex rel. Jaydeen Vincente v. Eli Lilly & Co.*, Apr. 23, 2008, No. 08–CV–600, Docket Entry No. 84 (dismissing action). The case originating in this district, brought by the state of Connecticut, will be tried on November 9, 2009 if it has not been settled or dismissed before that date. *See* Order, Apr. 21, 2009, No. 08–CV–955, Docket Entry No. 205. Motions for summary judgment in other state Attorney General cases before this court will be heard in fall 2009. *See* Case Management Order No. 6, No. 04–MD–1596, Docket Entry No.2092.

Some of Lilly's shareholders have filed suit because of the decline in share price. *See In re Eli Lilly & Co. Securities Litig.*, No. 07–CV–1310 (E.D.N.Y.). This litigation has been dismissed on statute of limitations grounds. *See In re Zyprexa Prods. Liab. Litig.*, 549 F.Supp.2d 496 (E.D.N.Y.2008).

Current shareholders have sued in this court in the form of three separate shareholder derivative actions. *See Waldman v. Taurel*, No. 08–CV–560 (E.D.N.Y.); *City of Taylor Employees Retirement System v. Taurel*, No. 08–CV–1554 (E.D.N.Y.); *Robins v. Taurel*, No. 08–CV–1471 (E.D.N.Y.). Similar cases are pending in other courts. Settlement negotiations are ongoing in another court.

In March 2008, Lilly reportedly settled with the state of Alaska during trial in a related case. *See* Alex Berenson, *Alaska Suit Against Lilly Is Settled*, N.Y, Times, Mar. 26, 2008, at C1 (reporting the settlement agreement reached after three weeks of trial before the case went to the jury). That state's lawsuit sought reimbursement for the medical costs of Alaska Medicaid patients who developed diabetes while taking Zyprexa; the state's claim to recover costs associated with Lilly's off-label promotion of Zyprexa was dismissed before trial. *See* Alex Berenson, *Lilly Executive Discussed Off-Label Uses for Drug*, N.Y. Times, Mar. 15, 2008, at C1. Some of the materials introduced in that trial are available in this court. Other *Zyprexa* settlements have followed. *See* Alex Berenson, *33 States to Get $62 Million in Zyprexa Case Settlement*, N.Y. Times, Oct. 7, 2008, at B7.